UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KEVIN NANCE**,                              Case No. 1:09 CV 1536

    Petitioner,                         Judge John R. Adams

vs.                                           REPORT AND RECOMMENDATION

**KEITH SMITH**,

    Respondent.                        Magistrate Judge James R. Knepp II

## Introduction

*Pro se* Petitioner Kevin Nance is a prisoner in state custody who seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner was convicted in December 2006 conviction of aggravated murder in violation of Ohio Revised Code § 2903.01(A) and sentenced to 33 years to life. (Ex. 7, Doc. 8-1 at 7). Thereafter, Petitioner exhausted his state appeals. *See State v. Nance*, 2008 WL 323142 (Ohio App. 8 Dist.), *appeal not accepted*, 118 Ohio St. 3d 1507 (2008) (Table). The district court has jurisdiction over the Petition under 28 U.S.C. § 2254(a). This case was referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). For the reasons stated below, the undersigned recommends the Petition be denied.

## The Instant Petition

Petitioner presents five grounds for relief in his Petition:

**Ground One**: As the State failed to introduce sufficient evidence on the element of "Prior Calculation and Design", Petitioner's Aggravated Murder conviction must be reversed as a matter of law.

**Ground Two**: The Jury's finding of "Prior Calculation and Design" was unsupported by the manifest weight of the evidence.

>**Ground Three:** As the trial court failed to consider the seriousness factors required by O.R.C. §2929.12, Petitioner's sentence must [be] vacated.
>
>**Ground Four:** As Petitioner's sentence was based on considerations prohibited by O.R.C. 2929.12©), his sentence must be vacated as contrary to law and offensive to equal protection principles.
>
>**Ground Five.** In refusing to instruct the jury that Petitioner had no duty to retreat from his home, the trial court committed reversible error.

(Doc. 1, at 3).

*Grounds One and Two – Sufficiency of the Evidence*

The first two grounds in effect challenge only the sufficiency of the evidence. Petitioner's manifest weight of the evidence claim in his second ground is not cognizable because it presents a non-constitutional state law issue. *See Morris v. Hudson*, 2007 WL 4276665, at *2 (N.D. Ohio 2007); *Nesbitt v. Bradshaw*, 2007 WL 1023302, at *2 (N.D. Ohio 2007). Petitioner concedes this point in his Traverse, and argues his second ground should merge with his first ground's sufficiency of the evidence claim. (Doc. 10 at 7). Because habeas review of the sufficiency of the evidence claim is proper, this Court will consider both grounds as a single argument regarding sufficiency of the evidence argument.

*Governing Law*

In habeas corpus review generally the district court must look to the last reasoned state court decision addressing the argument. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). Generally, this review is conducted under Congressionally circumscribed rules set out in 28 U.S.C. § 2254(d)(1) which permit habeas relief only if the state court decision is "contrary to" or "an unreasonable application" of "clearly established" federal law as set forth by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1). The next subsection, § 2254(d)(2), sets the

standard for resolution of factual disputes, where a petitioner must prove the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Petitioner's sufficiency of the evidence claim is governed primarily by 28 U.S.C. § 2254(d)(2).  This section accords a "double layer of deference" to state prisoner challenges:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir.  2009) (acknowledging *Brown*'s standard governs habeas review).

At the heart of a sufficiency of the evidence claim are the state court's factual findings.  The Court presumes these findings are correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 609 F.3d 870, 875 (6th Cir. 2010).

*Background*

The jury in Petitioner's trial was instructed on the offenses of aggravated murder, and its

3

lesser included offenses of murder and manslaughter.  (Trial Tr., Doc.  8-8,  at 994, 1018-1030). The jury found the evidence supported the crime of aggravated murder: "(A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."  Ohio Rev. Code § 2903.01(A).

The state appellate court found sufficient evidence to support the aggravated murder conviction.  The court reviewed the sequence of events beginning with the victim, Lambert Collins, unloading tools from a truck to help Karl Seals, the downstairs tenant of a duplex.  Seals and his girlfriend inhabited the downstairs unit of the duplex.  Petitioner and his girlfriend, Bertha Curry, inhabited the upstairs unit.  Three people were directly involved in the events leading to Collins' death:  Petitioner, his girlfriend Curry, and the Collins.  A verbal fracas began when Petitioner objected to Collins drinking a beer on the front porch of the duplex and ordered him to stop.  Collins continued to enjoy his beer despite Petitioner's harangue from an upstairs window.  The situation soon detonated:

> { ¶ 27}  In this case, defendant testified that he had words with Collins about him drinking beer in the front yard. Defendant entered his upstairs unit already angry and then heard Collins make derogatory remarks about him. This caused defendant to scream at Collins through the window. The situation continued to escalate as an overtly intoxicated Collins approached the duplex. While Bertha [Curry] went to talk to Collins in an effort to resolve the matter, defendant decided to go into his room and get a loaded gun. Collins was unarmed and no one believed him to have any type of weapon. After exchanging words with Collins, Bertha returned to her residence. At no time was Bertha afraid or scared of Collins.
>
> {¶ 28} Defendant conceded he could have returned to his residence and closed the door; he could have called the police, but instead he went down the steps to confront Collins with a loaded gun. Bertha said that defendant told Collins "I got something for you." Defendant removed the safety and pointed the loaded gun at Collins. Collins made the comments set forth previously and allegedly lunged with his right hand toward defendant, who proceeded to shoot and kill Collins.

*Nance,* 2008 WL 323142, at *4.

4

With respect to prior calculation and design – an element of aggravated murder – the state appellate court found:

> {¶ 26} The time frame sufficient for finding prior calculation and design has been addressed in Ohio law. " 'Neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves,' but 'momentary deliberation' is insufficient." *State v. Taylor* (1997), 78 Ohio St.3d 15, 22, 676 N.E.2d 82, 1997-Ohio-243, quoting Committee Comment to Am.Sub.H.B. No. 511; R.C. 2903.01. The Ohio Supreme Court has repeatedly recognized that some short-lived emotional situations can serve as the basis for finding the prior calculation and design element of aggravated murder. *Id*. (where defendant brought gun to the scene and had strained relationship with the victim, two to three minutes [from time of argument to killing] is more than instantaneous or momentary * * * and is more than sufficient for prior calculation and design), following *State v. Claytor* (1991), 61 Ohio St.3d 234, 574 N.E.2d 472; *State v. Robbins* (1979), 58 Ohio St.2d 74, 388 N.E.2d 755; *State v. Toth* (1977), 52 Ohio St.2d 206, 371 N.E.2d 831.

*State v. Nance,* 2008 WL 323142, *3 (footnote omitted).

*Analysis*

Petitioner makes both factual and legal challenges to the state appellate court's decision.

### *Factual Arguments*

The facts as described by Petitioner in his submissions to this Court indicate Petitioner views his own testimony with conclusive weight, and discounts the credibility of the State's witnesses who testified against him. (*See* Doc. 1 at 6-8). But this Court must view the evidence, including Petitioner's testimony (Trial Tr., Doc. 8-8, at 842-995), "in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 318-19. The credibility of witnesses, including Petitioner, is not a "determination of a factual issue" reviewable for purposes of § 2254(e)(1). Rather, "the assessment of credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo,* 513 U.S. 298, 330, (1995); *see also Ramonez v. Berghuis,* 490 F.3d 482, 490 (6th Cir. 2007) ("Our Constitution leaves it to the jury, not the judge, to evaluate the credibility of witnesses in deciding

5

a criminal defendant's guilt or innocence.").  Therefore, Petitioner's challenges to the credibility of State witnesses' testimony from his trial are not cognizable in habeas review.

Next, Petitioner presents accidental shooting – an "aimless shot" – as a legal argument. (Doc. 1 at 16).  Accident under state law is not an affirmative defense, but serves to negate the element of intent in crimes where intent must be shown. *See State v. Poole*, 33 Ohio St. 2d 18, 20 (1973) (citing *Jones v. State*, 51 Ohio St. 33 (1894)).  Accident is "denial or contradiction of evidence offered by the prosecution to prove an intent to kill." *State v. Stallings*, 89 Ohio St. 3d 280, 291 (2000) (quoting *Poole*, 33 Ohio St. 3d at 20).  But here, Petitioner's claim of accidental shooting is a matter of credibility.  By reaching a guilty verdict, the jury rejected the argument that the shooting was unintentional.  Petitioner cannot overcome the lack of weight given to his testimony by the state jury in this habeas proceeding.

### *Legal Arguments*

Petitioner's numerous challenges to the legal sufficiency of the evidence also fail.  He makes a number of legal arguments, including:

1. The evidence did not show specific intent to kill,

2. The evidence did not establish prior calculation and design,

3. Petitioner's actions were the product of instantaneous deliberation, or there was not sufficient time and opportunity for the planning of a homicide; and

4. The evidence shows Petitioner acted in self defense.

First, Petitioner contends there was a lack of evidence to demonstrate "specific intent to kill," citing the Supreme Court's statement in *Martin v. Ohio*, 480 U.S. 228, 235 (1987) ("the necessary mental state for aggravated murder under Ohio law is the specific purpose to take life pursuant to prior calculation and design. *See White v. Arn*, [788 F.2d 338]*supra*, at 346 [(6th Cir. 1986)].")  He

6

maintains there was no evidence of specific purpose. But under state law, intent to kill "may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound." *State v. Eley,* 77 Ohio St. 3d 174, 180 (1996) (superceded on other grounds, *see State v. Smith*, 80 Ohio St. 3d 89 (1997)). Carrying a loaded gun with its safety off is recognized in Ohio as evidence of specific intent to kill. *See State v. Freeman*, 2007 WL 4444394, at *3-4 (Ohio App.). Petitioner's additional act of aiming the gun at Collins serves to reinforce the evidence of specific intent to kill.

Second, Petitioner presents a series of arguments focused on his claim that the evidence failed to establish "prior calculation and design." "'[P]rior calculation and design' requires 'a scheme designed to implement the calculated decision to kill.'" *State v. Cassano,* 96 Ohio St. 3d 94, 108 (2002) (quoting *State v. Cotton*, 56 Ohio St. 2d at 11 (1978)). Petitioner argues three factors comprise the test under state law to establish whether there is a calculated scheme to kill:

1. Did the accused and victim know each other, and if so, was that relationship strained?
2. Did the accused give thought or preparation to choosing the murder weapon or murder site? and
3. Was the act drawn out or "an almost instantaneous eruption of events"?

*State v. Taylor,* 78 Ohio St. 3d 15, 19 (1997) (quoting *State v. Jenkins*, 48 Ohio App. 2d 99 (1976)).

This three-part test from *Jenkins* was initially cited in *Taylor*, but only as one example for the purpose of concluding that "review of the preceding cited cases convinces us that it is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design.'" *Taylor*, 78 Ohio St. 3d at 20; *see also Cassano*, 96 Ohio St. 3d at 108 (no bright-line test exists to distinguish between the presence or absence or prior calculation and design). Later, in *State v. Franklin*, 97 Ohio St. 3d 1, 14 (2002), these three factors

were pertinent "considerations" in determining prior calculation and design, but the court stressed that there is no bright-line test and there must be "a unique analysis of the facts of each case." These three "considerations" were never adopted by the Ohio Supreme Court as the sole means to distinguish between spur-of-the moment action and a calculated scheme to kill.

Third, contrary to Petitioner's argument, the state appellate court's decision was not mistaken in its reliance on *State v. Toth,* 52 Ohio St. 2d 206 (1977) (overruled on other grounds by *State v. Muscatello*, 55 Ohio St.2d 201, 203 n.3 (1978)). *See Nance*, 2008 WL 323142 ¶ 26. In *Toth*, the Ohio Supreme Court ruled the evidence from Toth's trial was sufficient to show that in a brief span of time before Toth fired the fatal shot, he had formed an intent and adopted a plan to kill the girls he believed had tampered with his car's headlights. *Toth*, 52 Ohio St. 2d at 213-14. The Ohio Supreme Court has continued to use *Toth* when "[t]he appellant's method of shooting . . . as well as his apparent determination to follow through on a specific course of action, sufficiently support the finding that the appellant had adopted a plan to kill." *Taylor*, 78 Ohio St. 3d at 22 (quoting *Toth*, 52 Ohio St. 2d at 213). Reliance on *Toth* was appropriate in this case because the facts established a short tumultuous encounter.[1] Further, because this is an issue purely of state law, it is not reviewable in this habeas proceeding. *Norris v. Schotten,* 146 F.3d 314, 328 (6th Cir. 1998).

Relatedly, Petitioner contends the facts established the shooting was the product of emotion, not intent. Citing *State v. Jones*, Petitioner argues that there was no "definite process of reasoning

---

[1] Petitioner is correct that both *State v. Robbins*, 58 Ohio St. 2d 74 (1979), and *State v. Claytor*, 61 Ohio St. 3d 234 (1991) are factually distinguishable because those cases involved fact situations where intent and plan to kill were demonstrated by the victim being rendered helpless before the victim was killed. However, the state court was making the point that "short-lived emotional situations enduring only a matter of a few minutes are more than sufficient for prior calculation and design." *See Nance,* 2008 WL 323142 at ¶ 26.

in advance of the homicide, which process for reasoning must have included a mental plan involving studied consideration of the method and means with which to cause the death of another." 91 Ohio St. 3d 335, 345 (2001) (citing *State v. Cotton*, 56 Ohio St. 2d 8 (1978)). The state appellate court found Petitioner went upstairs to get his gun while his girlfriend attempted to speak with Collins.

Thus, the shooting was planned by Petitioner before his girlfriend was in any danger requiring a rescue attempt or other defense of her. Viewed in the light most favorable to the prosecution, this evidence shows more than a moment of emotional outrage. As the state appellate court found, there was sufficient evidence of reasoning, planning, and studied consideration of the method and means to kill.

Petitioner seeks to establish his actions were the product of "instantaneous deliberation" or there was not "sufficient time and opportunity for the planning of an act of homicide." *See State v. Cotton*, 56 Ohio St. 2d at 8 (Syllabus ¶¶ 2, 3) ("Instantaneous deliberation is not sufficient to constitute 'prior calculation and design.'"). Not only must he establish that the facts are in his favor even when considered in the light most favorable to the prosecution, but he must also show the state court decision "unreasonably" determined the facts when it reached the opposite conclusion. *See White*, 602 F.3d at 710. These are insurmountable hurdles for Petitioner. As explained above, the evidence was sufficient to establish prior calculation, design, and specific intent to kill. Petitioner fails to demonstrate that the state appellate court's decision was incorrect under *Jackson*'s standard of review, much less that it was "unreasonable," which is "a substantially higher threshold." *See Brown*, 567 F.3d at 205. Consequently, Petitioner has failed to show that the state decision was contrary to or an unreasonable application of clearly established federal law as set forth by the Supreme Court of the United States, or an unreasonable determination of the facts. *See* 28 U.S.C.

§ 2254(d)(1) & (2).

Finally, Petitioner argues the evidence established he acted in self-defense. The state appellate court did not address this argument even though Petitioner raised self-defense as a component of his challenge to the sufficiency of the evidence. Under these circumstances, federal review is *de novo*.[2]

> In Ohio, the affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that []he was in imminent danger of death or great bodily harm and that h[is] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Thomas,* 77 Ohio St. 3d 323, 326 (1997) (citing *Williford*, 49 Ohio St. 3d at 249). Viewing the evidence in the light most favorable to the prosecution, Petitioner caused the situation. Petitioner was the "first aggressor" whose conduct gave "rise to the affray." *State v. Turner*, 175 Ohio App. 3d 250, 256 (2008). Further, as the state appellate court found, Petitioner could have closed his door to escape the situation and telephoned the police. He instead chose to go down the stairs to confront Collins. Lastly, as the state appellate court found in addressing the adequacy of the jury instructions, Petitioner violated a duty to retreat. Consequently, there is no merit to the self-defense argument.

***Grounds Three and Four – State Sentencing Considerations***

Petitioner argued on appeal that the trial court was required to set out express findings regarding seriousness, and he objected to the trial court's consideration of "black-on-black crime."

---

[2]When the state court does not respond to the federal constitutional arguments before it, the federal district court has no state court decision before it and must resolve the issue *de novo. See Cristini v. McKee,* 526 F.3d 888, 897 (6th Cir. 2008); *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005). "Under such review, questions of law, including mixed questions of law and fact, are reviewed *de novo*, and questions of fact are reviewed under the clear-error standard." *Montes v. Trombley,* 599 F.3d 490, 494 (6th Cir. 2010) (citing *Brown v. Smith*, 551 F.3d 424, 430 (6th Cir. 2008); *see also Cone v. Bell*, --- U.S.----, 129 S. Ct. 1769, 1784 (2009)).

Respondent contends both these grounds present questions of state law and consequently are not cognizable in habeas corpus.

*Third Ground is Non-Cognizable*

Respondent is correct with respect to the third ground – that the trial court failed to consider the seriousness factors required by Revised Code § 2929.12. The third ground does not present any cognizable habeas issue. This ground is simply a question of state procedure, and "[a] claim based solely on an error of state law is not redressable through the federal habeas process." *Norris,* 146 F.3d at 328 (citing *Estelle v. McGuire*, 502 U.S.62, 67-68 (1991)).

*Fourth Ground – Equal Protection Claim*

To support his fourth ground, Petitioner cites the trial record where the judge made reference to black heroes of the civil rights movement, and "what they did for you." (Trial Tr., Doc. 8-8, at 1166-68). The trial judge lectured against the plague of black-on-black crime at Petitioner's sentencing to memorialize Martin Luther King Day. While there is no merit to Petitioner's equal protection argument, it cannot be simply dismissed as a non-cognizable claim as Respondent contends.

Review of the fourth ground involves: 1) resolution of whether there was a reasonable factual determination, and 2) review under § 2254(d)(1), whether the state court decision was "contrary to" or "an unreasonable application" of "clearly established" federal law as set forth by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

This ground, alleging denial of equal protection due to racial bias, is governed by clearly established law as set forth in *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). To succeed on this ground, Petitioner must prove both discriminatory effect and purpose. *Id*.; *Keene v. Mitchell*, 525

F.3d 461, 464 (6th Cir. 2008).

> The state appellate court found neither discriminatory purpose or effect:
>
> {¶ 38} Defendant also maintains the trial court based his sentence on his race contrary to R.C. 2929.11(C) and in violation of equal protection principles. Defendant believes that the court "focused on the issue of black-on-black crime" and takes exception with the trial court's discussion of Dr. Martin Luther King's legacy during his sentencing hearing. There is no indication that the trial court's comments in this regard impacted the sentence that was imposed. Quite to the contrary, the trial court was specifically echoing the comments that were made prior to sentencing by many of the members of the murder victim's family. The court at no time indicated that it was imposing a harsher sentence upon the defendant due to his race nor can that fairly be inferred from the record when it is read in context.

*Nance,* 2008 WL 323142, at *5.

When the state decision addresses the argument but does not identify what legal precedent or standard used as the foundation for its decision, a deferential standard of review applies, which liberally requires "that a state court need not even be aware of all precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 7-8 (2000) (per curiam)).

The state appellate court rejected Petitioner's contention that he received a harsher sentence on account of his race. Petitioner has not shown that the state appellate court's reasoning and decision contradicted *McCleskey*, nor has he shown that the result presented an unreasonable application of Supreme Court precedent. *See Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir. 2000). Finally, Petitioner has not shown that the state appellate court's determination of the facts was unreasonable.

### *Ground Five – Jury Instruction*

In his fifth ground, Petitioner argues the trial court erred by not instructing the jury that Petitioner had no duty to retreat. The state appellate court decision cited several unreported Ohio

cases as support for its view that Petitioner had a duty to retreat in the common area of the duplex. Petitioner maintains the shooting occurred on the stairwell – exclusively part of his home – thus there was no duty to retreat in his own home. Respondent argues this instruction concerns a matter of state law.

Petitioner's challenge to the jury instruction is simply a matter of interpretation of state law governing self-defense. The federal court "cannot grant the writ based on our disagreement with 'state-court determinations on state-law questions,' *Estelle v. McGuire*, 502 U.S. 62, 68 . . . (1991), unless the state-court determination is so 'fundamentally unfair' that it deprives a defendant of due process, *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)." *Wynne v. Renico,* 606 F.3d 867, 871 (6th Cir. 2010). As discussed above, even if the state court acted in error on this point, Petitioner failed to establish the first two elements of self-defense because he was both at fault in creating the situation, and his only means of escape did not require the use of force. *See Thomas*, 77 Ohio St. 3d at 326. There was no denial of fundamental fairness due to the futility of the self-defense instruction.

### No Fundamental Miscarriage of Justice

In his Traverse, Petitioner argues the evidence at trial should have led to his acquittal, and there was thus a fundamental miscarriage of justice. (Doc. 10, at 6). To succeed, Petitioner would need to present "new reliable evidence. . . that was not presented at trial" *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). Petitioner has

not done so.

## Conclusion and Recommendation

Following review of the Petition and applicable law, the grounds for relief presented by Petitioner do not entitle him to habeas relief.  Furthermore, Petitioner has not established any error resulting in a denial of fundamental fairness or cause to hesitate due to the probability of actual innocence.  And there is no demonstrated need for an evidentiary hearing.  The undersigned recommends the Petition be denied and dismissed in its entirety.

                                     s/James R. Knepp II
                                     United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).